UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

LARRY PHILPOT,                                :

                Plaintiff,      :

       - against -                :      Case No. 17 Civ. 822 (TSE)(MSN)

MEDIA RESEARCH CENTER INC.,       :

            Defendant.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT



RIEBLING IP, PLLC
1717 Pennsylvania Avenue, N.W.
Suite 1025
Washington, D.C. 20006-3591
Phone: (202) 631-2021
peter.riebling@rieblinglaw.com


-and-


DUNNEGAN & SCILEPPI LLC
350 Fifth Avenue
New York, New York 10118
Phone: 212) 332-8300
wd@dunnegan.com


*Attorneys for Plaintiff Larry Philpot*

Table of Contents

Table of Authorities ................................................................................................................ ii

Philpot's Response to MRC's Statement of Indisputable Facts ....................................................1

Philpot's Supplemental Statement of Indisputable Facts...............................................................5

Argument ....................................................................................................................................6

    I.      MRC HAS NO LICENSE DEFENSE AS A MATTER OF LAW ........................8

    II.     FAIR USE PRESENTS, AT A MINIMUM, A QUESTION OF FACT ..............11

          A.    Factor One: The "Purpose And Character" Of The Use,
                Favors Philpot ...........................................................................13

                  1.    MRC Used The Photographs For A Commercial Purpose ...........13

                  2.    MRC's Use Of The Photographs Was Not Transformative ..........16

          B.    Factor Two: The Nature Of The Copyrighted Work, Is Neutral ..............22

          C.    Factor Three: The Amount And Substantiality Used, Favors Philpot .......23

          D.    Factor Four: The Harm To The Potential Market, Favors Philpot ...........24

    III.    THE FIRST AMENDMENT DOES NOT INSULATE MRC
          FROM LIABILITY AS A MATTER OF LAW ..................................................27

Conclusion ..................................................................................................................................28

Table of Authorities

**Cases**

A Fisherman's Best, Inc. v. Recreational Fishing All.,
310 F.3d 183 (4th Cir. 2002) ................................................................. 6-7

Allen v. Aetna Casualty and Surety Co.,
222 Va. 361, 281 S.E.2d 818 (1981)........................................................... 8

Am. Geophysical Union v. Texaco Inc.,
60 F.3d 913 (2d Cir. 1994)...................................................................... 25

Artifex Software, Inc. v. Hancom, Inc.,
16 Civ. 06982 (JSC), 2017 WL 1477373 (N.D. Cal. Apr. 25, 2017) .................... 24-25

Ascend Health Corp. v. Wells,
12 Civ. 00083 (WEB), 2013 WL 1010589 (E.D.N.C. Mar. 14, 2013)...................... 20

Authors Guild v. Google, Inc.,
804 F.3d 202 (2d Cir. 2015),
cert. denied sub nom.
The Authors Guild v. Google, Inc.,
136 S. Ct. 1658 (2016)....................................................................... 13,17

Automation By Design, Inc. v. Raybestos Prod. Co.,
463 F.3d 749 (7th Cir. 2006) .................................................................... 8

A.V. ex rel. Vanderhye v. iParadigms, LLC,
562 F.3d 630 (4th Cir. 2009) ............................................................... 16,21

Balsley v. LFP, Inc.,
691 F.3d 747 (6th Cir. 2012) ........................................................... 18,22,24

Barcroft Media, LTD., v. Coed Media Group, LLC,
2017 WL 5032993 (S.D.N.Y. Nov. 2, 2017)................................................ 15,18

Bill Graham Archives v. Dorling Kindersley Ltd.,
448 F.3d 605 (2d Cir. 2006).................................................................... 21

Blanch v. Koons,
467 F.3d 244 (2d Cir. 2006)................................................................. 12,22

Bouchat v. Baltimore Ravens Ltd. P'ship,
619 F.3d 301 (4th Cir. 2010) .............................................................. passim

Bourne v. Walt Disney Co.,
68 F.3d 621 (2d Cir. 1995)........................................................................ 11

Byrne v. British Broad. Corp.,
132 F. Supp.2d 229 (S.D.N.Y. 2001)......................................................... 14

Cambridge Univ. Press v. Patton,
769 F.3d 1232 (11th Cir. 2014) ................................................................. 25

Campbell v. Acuff-Rose Music, Inc.,
510 U.S. 569 (1994).......................................................................... passim

Caner v. Autry,
16 F. Supp.3d 689 (W.D. Va. 2014) .......................................................... 20

Cariou v. Prince,
714 F.3d 694 (2d Cir. 2013)........................................................................ 22

Celotex Corp. v. Catrett,
477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ................................. 7

Cranbrook Inv'rs, Ltd. v. Great Atl. Mgmt.,
201 F.3d 435 (4th Cir. 1999) ....................................................................... 9

Eldred v. Ashcroft,
537 U.S. 186 (2003)................................................................................... 11

Eplus Grp., Inc. v. Grimes,
56 F. App'x 589 (4th Cir. 2003) .................................................................. 8

Feist Publ'ns Inc. v. Rural Tel. Serv. Co.,
499 U.S. 340 (1991)..................................................................................... 7

Fugate v. Frontier W. Virginia, Inc.,
17 Civ. 00559 (TEJ), 2017 WL 3065216 (S.D.W. Va. July 19, 2017)........ 11

Greater Baltimore Ctr. for Pregnancy Concerns, Inc.
  v. Mayor & City Council of Baltimore,
721 F.3d 264 (4th Cir. 2013) ....................................................................... 6

Harper & Row Publishers, Inc. v. Nation Enters.,
471 U.S. 539 (1985)......................................................................... passim

Hoge v. Schmalfeldt,
14 Civ. 1683 (ELH), 2014 WL 3052489 (D. Md. July 1, 2014) ............ 20-21

Hustler Magazine Inc. v. Moral Majority Inc.,
796 F.2d 1148 (9th Cir. 1986) ................................................................ 26

Jacobsen v. Katzer,
535 F.3d 1373 (Fed. Cir. 2008) ............................................................... 24

Kirtsaeng v. John Wiley & Sons, Inc.,
136 S. Ct. 1979 (2016) ............................................................................ 12

Lish v. Harper's Magazine Found.,
807 F. Supp. 1090 (S.D.N.Y. 1992),
amended,
91 Civ. 0782 (MEL),
1993 WL 7576 (S.D.N.Y. Jan. 7, 1993) ............................................. 14-15

Marobie-FL, Inc. v. Nat'l Ass'n of Fire Equip. Distribs.,
983 F. Supp. 1167 (N.D. Ill. 1997) .......................................................... 14

Monge v. Maya Magazines, Inc.,
688 F.3d 1164 (9th Cir. 2012) ................................................................. 20

N.A.D.A. Servs. Corp. v. Bus. Data of Virginia, Inc.,
651 F. Supp. 44 (E.D. Va. 1986) ............................................................... 9

N. Jersey Media Grp. Inc. v. Pirro,
74 F. Supp. 3d 605 (S.D.N.Y. 2015)................................................... 22,23

Nat'l Rifle Ass'n of Am. v. Handgun Control Fed'n of Ohio,
15 F.3d 559 (6th Cir. 1994) ..................................................................... 26

Nunez v. Caribbean Int'l News Corp.,
235 F.3d 18 (1st Cir. 2000) ................................................................ 17,19

Oracle Am., Inc. v. Google Inc.,
750 F.3d 1339 (Fed. Cir. 2014)................................................................ 17

Perfect 10, Inc. v. Amazon.com, Inc.,
508 F.3d 1146 (9th Cir. 2007) ................................................................. 21

Psihoyos v. Nat'l Exam'r,
97 Civ. 7624 (JSM), 1998 WL 336655 (S.D.N.Y. June 22, 1998)............. 18

Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.,
673 F.3d 294 (4th Cir. 2012) ..................................................................... 7

Reed Elsevier, Inc. v. Muchnick,
559 U.S. 154 (2010) ................................................................................................. 7

Reiner v. Nishimori,
15 Civ. 00241 (WDC), 2017 WL 1545589 (M.D. Tenn. Apr. 28, 2017) ......................... 23-24, 27

Richmond, Fredericksburg & Potomac R.R. v. Forst,
4 F.3d 244 (4th Cir.1993) ....................................................................................... 11

Smith v. Farrell,
199 Va. 121, 198 S.E.2d 3 (1957) ............................................................................ 9

Sony/ATV Publ'g, LLC v. Marcos,
651 F. App'x 482 (6th Cir. 2016) ............................................................................. 10

Sony Corp. of Am. v. Universal City Studios, Inc.,
464 U.S. 417 (1984) ............................................................................................. 13,14

Spinelli v. Nat'l Football League,
96 F. Supp. 3d 81 (S.D.N.Y. 2015) .......................................................................... 8

Stewart v. Abend,
495 U.S. 207 (1990) .............................................................................................. 12

Television Digest, Inc. v. U.S. Tel. Ass'n,
841 F. Supp. 5 (D.D.C. 1993) ................................................................................. 14

Tattoo Art Inc. v. TAT Int'l LLC,
498 F. App'x 341 (4th Cir. 2012) ............................................................................ 10

United States v. Larracuente,
952 F.2d 672 (2d Cir. 1992) ................................................................................... 11

Wu v. Pearson Educ. Inc.,
10 CIV. 6537 KBF, 2013 WL 145666 (S.D.N.Y. Jan. 11, 2013) ................................... 8

**United States Constitution**

U.S. Const., Art. I, § 8, cl. 8 .................................................................................... 12

**Rules**

Fed. R. Civ. P. 8(c)(1) ........................................................................................................... 11

Fed. R. Civ. P. 56 ................................................................................................................. 6,7

**Statutes**

17 U.S.C. § 107 ................................................................................................................. 12, 23

17 U.S.C. § 411(a)……………………………………………………………………….. 7

Plaintiff Larry Philpot ("Philpot") respectfully submits this memorandum in opposition to the motion of defendant Media Research Center Inc. ("MRC") for summary judgment.

Philpot's Response to MRC's Statement of Indisputable Facts

1.  Admitted.

2.  Admitted.

3.  Admitted.

4.  Admitted, except to clarify that MRC also owns and operates the MRCTV website to generate revenue for MRC. (Dunnegan Dec. Ex. G at 99:19-101:3, 112:13-113:9 and 118:6-123:19)

5.  Admitted, except to clarify that the MRCTV website is also designed to generate revenue for MRC. (Dunnegan Dec. Ex. G at 99:19-101:3, 112:13-113:9 and 118:6-123:19)

6.  Admitted.

7.  Admitted to the extent that MRC is organized as a "non-profit," but otherwise denied because MRC receives revenue from maintaining and operating MRCTV. (Dunnegan Dec. Ex. G at 99:19-101:3, 112:13-113:9 and 118:6-123:19)

8.  Denied, because MRC publishes articles and blog posts on MRCTV to both educate the public and generate revenue. (Dunnegan Dec. Ex. G at 99:19-101:3, 112:13-113:9, 118:6-123:19 and 129:10-130:5)

9.  Admitted.

10. Admitted.

11. Admitted.

12. Admitted.

13. Admitted.

14. Admitted.

15. Admitted.

16. Admitted, except to the extent that Philpot created the Chesney Photograph with the intent that, among other things, the Chesney Photograph would be used to visually enhance articles about Kenny Chesney, regardless of whether those articles were about Kenny Chesney's political beliefs. (Philpot Dec. ¶ 13)

17. Admitted.

18. Admitted.

19. Denied to the extent that a copyrighted work itself is not "subject to" a license, but admitted that when Philpot uploaded the Chesney Photograph onto the Wikimedia website, the Chesney Photograph was then available for use, subject to a Creative Commons attribution license.

20. Denied as to the phrase "for free," because the Creative Commons attribution license required that the licensee provide non-monetary compensation to Philpot through attribution. (Philpot Dec. Exs. A and B; Dunnegan Dec. Ex. I)

21. Admitted.

22. Admitted, except to clarify that Philpot does not know how many times Wikimedia, who Philpot licensed to provide further licenses, licensed the use of, or gave permission for the use of, the Chesney Photograph to an individual or business.

23. Admitted.

24. Admitted, with the understanding that the word "published" in this context has a colloquial definition, as opposed to the specific definition in the Copyright Act.

25. Admitted.

26. Admitted.

27. Admitted, except to clarify that another purpose of the Pro-Life Article was to generate revenue for MRC. (Dunnegan Dec. Ex. G at 99:19-101:3, 112:13-113:9, and 118:6-123:19)

28. Admitted.

29. Admitted.

30. Admitted.

31. Admitted, except to clarify that MRC also understood, based on the plain meaning of the language in the letter, that the letter demanded that MRC cease all public display of the Chesney Photograph, and demanded monetary payment to Philpot. (Dunnegan Dec. Ex. J)

32. Admitted, except as to the characterization of the timing as "immediately," and except to clarify that MRC continued to publicly display the Chesney Photograph on its website at the Chesney Photograph URL. (Dunnegan Dec. Ex. K)

33. Admitted.

34. Denied as to the characterization of the amount of revenue as "negligible," but otherwise admitted.

35. Admitted.

36. Admitted.

37. Admitted.

38. Admitted.

39. Admitted.

40. Denied to the extent that a copyrighted work itself is not "subject to" a license, but

admitted that when Philpot uploaded the Kid Rock Photograph onto the Wikimedia website, the

Kid Rock Photograph was then available for use, subject to a Creative Commons attribution

license.

41.  Denied as to the phrase "for free," because the Creative Commons attribution license

required that the licensee provide non-monetary compensation to Philpot through attribution.

(Philpot Dec. Exs. A and B; Dunnegan Dec. Ex. I)

42. Admitted.

43. Admitted, except to clarify that Philpot does not know how many times Wikimedia, who

Philpot licensed to provide further licenses, licensed the use of, or gave permission for the use of,

the Kid Rock Photograph to an individual or business.

44. Admitted.

45. Admitted, with the understanding that the word "published" in this context has a

colloquial definition, as opposed to the specific definition in the Copyright Act.

46. Admitted.

47. Admitted.

48. Admitted, except to clarify that another purpose of the Kid Rock Article (referred to by

MRC as the Senate Article) was to generate revenue for MRC. (Dunnegan Dec. Ex. G at 99:19-

101:3, 112:13-113:9 and 118:6-123:19)

49. Admitted that MRC's display of the Kid Rock Photograph on the Kid Rock Article

cropped some of the background and added a headline banner, but denied that it was an "altered

version" of the Kid Rock Photograph.

50. Denied that MRC "cropped and removed a majority" of the Kid Rock Photograph in

connection with the public display with the Kid Rock Article because MRC used the "heart" of

the Kid Rock Photograph, and Philpot clarifies that MRC reproduced the uncropped,

unbannered, Kid Rock Photograph on a hard drive and/or at an online storage location

(Dunnegan Dec. Ex. F at ¶ 26), and publicly displayed it at the Kid Rock Photograph URL.

(Dunnegan Dec. Ex. F at ¶¶ 29 and 32; Dunnegan Dec. Ex. L)

51. Denied, because the deposition testimony MRC cites referred to the Chesney Article

(referred to by MRC as the Pro-Life Article), and the testimony was about a specific point in

time.

52. Admitted, except as to the characterization of the timing as "immediately," and except to

clarify that MRC continued to publicly display the Kid Rock Photograph on its website at the

Kid Rock Photograph URL. (Dunnegan Dec. Ex. L)

53. Admitted, except as to the characterization of the timing as "immediately," and except to

clarify that MRC continued to publicly display the Kid Rock Photograph on its website at the

Kid Rock Photograph URL. (Dunnegan Dec. Ex. L)

54. Admitted.

55. Denied as to the characterization of the amount of revenue as "negligible," but otherwise

admitted.

56. Admitted.

<u>Philpot's Supplemental Statement of Indisputable Facts</u>

57. Philpot owns valid registered copyrights in both the Chesney Photograph and the Kid

Rock Photograph (jointly, the "Photographs"). (Dunnegan Dec. Ex. G at 83:9-84:4, 86:6-9 and

86:20-87:1)

58. MRC reproduced the Photographs and publicly displayed them on its website. (Dunnegan

Dec. Ex. F at ¶¶ 16-38)

59. MRC publicly displayed the Chesney Photograph at two URLs – (i) the Chesney

Photograph URL (Dunnegan Dec. Ex. F at ¶¶ 18, 20), which contained only the Chesney

Photograph (Dunnegan Dec. Ex. K), and (ii) the Chesney Article. (Dunnegan Dec. Ex. F at ¶¶

22-25; Dkt. 26-1 at Ex. A-1)

60. MRC publicly displayed the Kid Rock Photograph at two URLs – (i) the Kid Rock

Photograph URL (Dunnegan Dec. Ex. F at ¶¶ 29, 32) which contained only the Kid Rock

Photograph (Dunnegan Dec. Ex. L), and (ii) the Kid Rock Article. (Dunnegan Dec. Ex. F at ¶¶

36-38; Dkt. 26-1 at Ex. A-2)

61. MRC had the technical capability to provide attribution to Philpot. (Dunnegan Dec. Ex. F

at 95)

62. Providing attribution was a material term of the Creative Commons attribution license.

(Philpot Dec. ¶ 8 and Exs. A and B; Dunnegan Dec. Ex. I)

63. MRC did not provide attribution to Philpot for either of the Photographs. (Dunnegan

Dec. Ex. F at ¶¶ 96, 106)

<u>Argument</u>

Summary judgment should only be granted if, in viewing the evidence in the light most

favorable to the non-moving party, there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56; <u>Greater Baltimore Ctr. for</u>

<u>Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore</u>, 721 F.3d 264, 283 (4th Cir.

2013) ("In addition to indefensibly denying the City discovery, the district court flouted the well-

known and time-tested summary judgment standard. Under that standard, summary judgment is

appropriate only if, as Rule 56 is currently written, 'the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law.' Fed.R.Civ.P. 56(a)."); A Fisherman's Best, Inc. v. Recreational Fishing All., 310 F.3d 183, 190 (4th Cir. 2002) ("The district court applied proper summary judgment standards. Evidence should be viewed in the light most favorable to the non-moving party. The court must find that there is no genuine issue as to any material fact.") (citations omitted).

"To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying [or public display] of constituent elements of the work that are original." Feist Publ'ns Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).  A plaintiff must also demonstrate registration of the copyright in compliance with 17 U.S.C. § 411(a). Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 157 (2010) ("Subject to certain exceptions, the Copyright Act (Act) requires copyright holders to register their works before suing for copyright infringement").

A movant must prove every element of an affirmative defense to prevail on summary judgment.  Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc., 673 F.3d 294, 299 (4th Cir. 2012) ("Where, as here, the movant seeks summary judgment on an affirmative defense, it must conclusively establish all essential elements of that defense. See Celotex Corp. v. Catrett, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (defendant may prevail on a motion for summary judgment on an affirmative defense when it has produced credible evidence that would entitle it to a directed verdict if not controverted at trial).").

Here, there is no dispute that Philpot owns valid registered copyrights in the Photographs (Dunnegan Dec. Ex. G at 83:9-84:4, 86:6-9 and 86:20-87:1), and that MRC reproduced the Photographs and publicly displayed them on its website (Dunnegan Dec. Ex. F at ¶¶ 16-38; Dkt. 26-1 at Exs. A-1 and A-2).  Accordingly, MRC moves for summary judgment pursuant to Fed.

7

R. Civ. P. 56 based on three affirmative defenses: (i) MRC breached a license agreement, and therefore could not have also committed copyright infringement, (ii) MRC's use of Philpot's Chesney Photograph and Kid Rock Photograph constitutes a fair use as a matter of law, and (iii) the First Amendment insulates MRC from liability for copyright infringement.  None of these defenses has merit.

I.

MRC HAS NO LICENSE DEFENSE AS A MATTER OF LAW

MRC's argument that it merely breached the Creative Commons attribution license available on Wikimedia, and did not commit copyright infringement, is wrong for three reasons.

First, MRC *admitted* that it did not obtain a license for its use of the Kid Rock Photograph and Chesney Photograph. (Dunnegan Dec. Ex. F at ¶¶ 107-110)   Accordingly, any attempt by MRC to avoid liability now based on a "license" defense is disingenuous, and at a minimum, creates a question of fact.

Second, MRC cannot show it was a party to the Creative Commons attribution license.  A copyright license is a contract.  Automation By Design, Inc. v. Raybestos Prod. Co., 463 F.3d 749, 760 n.5 (7th Cir. 2006) ("Trademark license contract disputes, just like copyright license disputes, are governed by the general rules of contract interpretation."); Spinelli v. Nat'l Football League, 96 F. Supp. 3d 81, 122 (S.D.N.Y. 2015) ("Copyright licenses are construed according to neutral principles of contract interpretation."); Wu v. Pearson Educ. Inc., 10 CIV. 6537 KBF, 2013 WL 145666, at *4 (S.D.N.Y. Jan. 11, 2013) ("Copyright licenses are generally construed according to neutral principles of contract interpretation.").  MRC does not even attempt to satisfy the elements of a contract. (Dkt. 26 at 17-19/34)

Contracts require a meeting of the minds on all material terms. Eplus Grp., Inc. v. Grimes, 56 F. App'x 589, 590 (4th Cir. 2003) ("To prove the formation of an enforceable

8

contract, the plaintiff must show that there was a meeting of the minds on all material terms.
E.g., Allen v. Aetna Casualty and Surety Co., 222 Va. 361, 281 S.E.2d 818, 820 (1981).");
Cranbrook Inv'rs, Ltd. v. Great Atl. Mgmt., 201 F.3d 435 (4th Cir. 1999) ("For a contract to
exist, the parties' must have a meeting of the minds; the parties therefore must agree on all
material terms. See Smith v. Farrell, 199 Va. 121, 127–28, 98 S.E.2d 3, 7 (1957)."); See
N.A.D.A. Servs. Corp. v. Bus. Data of Virginia, Inc., 651 F. Supp. 44, 49 (E.D. Va. 1986) ("The
creation of an implied license, as in the creation of any implied contract, requires a meeting of
the minds.").

　　　　MRC has no evidence that it was aware of the material terms for – or even existence of –
the Creative Commons attribution licenses for these Photographs until after it received Philpot's
cease and desist letter.  The MRC employee who reproduced and publicly displayed the Kid
Rock Photograph, was unaware of the any terms and conditions restricting its use until after
Philpot contacted MRC. (Dunnegan Dec. Ex. H at 22:18-24:19 and Ex. G at 77:11-78:7)  MRC
cannot identify which employee reproduced and publicly displayed the Chesney Photograph, and
where that employee obtained it, let alone whether the employee was aware of the material terms
of the Creative Commons attribution license.  (Dunnegan Dec. Ex. G at 12:8-14:18 and 23:2-
25:10)  Thus, MRC is asking this Court to set aside basic contract principles and find – as a
matter of law – that either (i) MRC formed a contract without any awareness of the contract's
material terms, or (ii) MRC retroactively became a party to a contract that it later discovered.
The Court can end its analysis of MRC's license defense with those undisputed facts.

　　　　Third, assuming *arguendo* MRC was a party to the Creative Commons attribution
licenses for each of the Photographs, MRC ignores its terms regarding termination.  The Creative

Commons attribution license expressly terminated automatically upon breach.  Paragraph 7(a)

stated, in relevant part:

> "This License and the rights granted hereunder will terminate automatically upon any
> breach by You of the terms of this License." (Dunnegan Dec. Ex. I)

It cannot reasonably be disputed that attribution was a material term of the Creative Commons

attribution license. (Philpot Dec. ¶ 8 and Exs. A and B; Dunnegan Dec. Ex. I)  Accordingly,

upon MRC's failure to provide attribution, the license would have terminated, or at least a jury

could so find.

After a license terminates, an ongoing public display is the proper basis for a claim of

copyright infringement.  <u>Tattoo Art Inc. v. TAT Int'l LLC</u>, 498 F. App'x 341, 346 (4th Cir.

2012) ("In the post-termination context, TAT's continued display of the copyrighted works

constituted infringement for the additional reason that TAT was contractually required to

'immediately cease all sales' of the stencils in light of Tattoo Art's notice of termination for

breach."). MRC admits that it publicly displayed the Photographs without attribution. (Dunnegan

Dec. Ex. F at ¶¶ 16-38, 96, 106 and Ex. G at 72:7-13)  There can be no question that MRC's

public displays of the Photographs were "outside the scope" of any Creative Commons

attribution license, and therefore the appropriate basis for a copyright infringement claim.[1]

Furthermore, Philpot's "omission" of the available Creative Commons attribution license

from the complaint is not "conspicuous" or "significant." (Dkt. 26 at 17/34) License is an

affirmative defense to a claim of copyright infringement. <u>Sony/ATV Publ'g, LLC v. Marcos</u>, 651

---

[1] MRC's argument that "under copyright law, there is no obligation for a licensee to credit an author of a copyrighted work" misses the point. (Dkt. 26 at 18/34) Philpot's copyright claims are based on MRC's unauthorized reproduction and public display of the Photographs. Philpot is not claiming MRC infringed by failing to provide attribution.  MRC's failure to provide attribution is relevant only to MRC's lack of a "license" defense, because MRC's lack of attribution would have automatically terminated any Creative Commons attribution license.

F. App'x 482, 485 (6th Cir. 2016) ("A valid license is an affirmative defense to copyright

infringement."); Bourne v. Walt Disney Co., 68 F.3d 621, 631 (2d Cir. 1995) ("Bourne is correct

insofar as it contends that the possession of a license by an accused infringer traditionally has

been characterized as a matter of affirmative defense."); United States v. Larracuente, 952 F.2d

672, 673–74 (2d Cir. 1992) ("If the accused infringer has been licensed by a licensee of the

copyright owner, that is a matter of affirmative defense.").

A plaintiff need not plead defenses to a potential affirmative defense. Fugate v. Frontier

W. Virginia, Inc., 17 Civ. 00559 (TEJ), 2017 WL 3065216, at *3 (S.D.W. Va. July 19, 2017)

("The Court notes that res judicata, release, and statute of limitations are affirmative defenses,

Fed. R. Civ. P. 8(c)(1), and thus need not be 'anticipate[d] and negate[d]' in a plaintiff's

pleading."); Crump v. Tcoombs & Assocs., LLC, 13 Civ. 707 (MSD), 2014 WL 4748520, at *4

(E.D. Va. Sept. 23, 2014) ("In other words, a motion to dismiss pursuant to Rule 12(b)(6), based

solely on an affirmative defense, may be considered only 'if all facts necessary to the affirmative

defense 'clearly appear[ ] on the face of the complaint.' Id. (emphasis omitted) (quoting

Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir.1993)). 'To

require otherwise would require a plaintiff to plead affirmatively in his complaint matters that

might be responsive to affirmative defenses even before the affirmative defenses are raised.'").

Accordingly, MRC's license defense fails as a matter of law.

## II.

## FAIR USE PRESENTS, AT A MINIMUM, A QUESTION OF FACT

The Court should analyze the affirmative defense of fair use through the lens of the

purpose of the Copyright Act: to promote the creation and publication of free expression. Eldred

v. Ashcroft, 537 U.S. 186, 219 (2003) ("Indeed, copyright's purpose is to *promote* the creation

and publication of free expression."). The Copyright Act seeks to achieve that purpose by

rewarding a copyright owner for his or her creative effort. Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 558 (1985) ("[T]he Framers intended copyright itself to be the engine of free expression. By establishing a marketable right to the use of one's expression, copyright supplies the economic incentive to create and disseminate ideas.").

The purpose of the fair use doctrine is to "avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." Stewart v. Abend, 495 U.S. 207, 236 (1990) (citation omitted) (internal quotation marks omitted). "The ultimate test of fair use… is whether the copyright law's goal of 'promoting the Progress of Science and useful Arts,' U.S. Const., Art. I, § 8, cl. 8, would be better served by allowing the use than by preventing it." Blanch v. Koons, 467 F.3d 244, 251 (2d Cir. 2006) (citations omitted) (internal quotation marks omitted); Kirtsaeng v. John Wiley & Sons, Inc., 136 S. Ct. 1979, 1986 (2016) (Fair use "enrich[es] the general public through access to creative works' ... by striking a balance between ... encouraging and rewarding authors' creations while also enabling others to build on that work.").  "The task is not to be simplified with bright-line rules, for the statute, like the doctrine it recognizes, calls for case-by-case analysis." Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 577 (1994).

Application of that test requires a balancing of the four factors in 17 U.S.C. § 107, which provides:

> "In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—
>
> (1)     the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2)     the nature of the copyrighted work;
>
> (3)     the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4)    the effect of the use upon the potential market for or value of the copyrighted work."

"[T]he Supreme Court has made clear that some of the statute's four listed factors are more significant than others." Authors Guild v. Google, Inc., 804 F.3d 202, 213–14 (2d Cir. 2015), cert. denied sub nom. The Authors Guild v. Google, Inc., 136 S. Ct. 1658 (2016).  The first and fourth factors are the most important. See id. at 214 ("The Court observed in Harper & Row Publishers, Inc. v. Nation Enterprises that the fourth factor, which assesses the harm the secondary use can cause to the market for, or the value of, the copyright for the original, 'is undoubtedly the single most important element of fair use.'  This is consistent with the fact that the copyright is a commercial right, intended to protect the ability of authors to profit from the exclusive right to merchandise their own work. In Campbell, the Court stressed also the importance of the first factor, the 'purpose and character of the secondary use.'") (citation omitted).

Under this test, the facts weigh heavily against a finding of fair use, and, at a minimum, create a question of fact.

A.    Factor One: The "Purpose And Character" Of The Use, Favors Philpot.

The first fair use factor addresses the justification for the defendant's use of the copyrighted work.  This factor examines whether the defendant's use was (i) commercial, as opposed to a non-profit educational use, See Bouchat v. Baltimore Ravens Ltd. P'ship, 619 F.3d 301, 310-11 (4th Cir. 2010), and (ii) transformative. See Campbell 510 U.S. at 579.

1.    MRC Used The Photographs For A Commercial Purpose.

Commercial use is generally not fair use, because the accused infringer ordinarily could

13

have obtained a copyright license, and thereby provided the incentive to the copyright owner that is central to the Copyright Act. See Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. 417, 451 (1984) ("Thus ... every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright ..."); Campbell, 510 U.S. at 585 ("The Court of Appeals's elevation of one sentence from Sony to a *per se* rule thus runs as much counter to Sony itself as to the long common-law tradition of fair use adjudication. Rather, as we explained in Harper & Row, Sony stands for the proposition that the 'fact that a publication was commercial as opposed to nonprofit is a separate factor that tends to weigh against a finding of fair use.'").

"The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." Harper & Row, 471 U.S. at 562; Bouchat, 619 F.3d at 311.

MRC rests its argument substantially on its status as a not-for-profit entity with an educational and news reporting mission.  This is irrelevant.  The fair use analysis focuses on the use, not the user. Byrne v. British Broad. Corp., 132 F. Supp.2d 229, 234 (S.D.N.Y. 2001) ("The BBC contends that because it is a not-for-profit corporation, its use of the Song was necessarily 'non-commercial,' and was instead 'for nonprofit educational purposes.' However, 'non-profit organizations enjoy no special immunity from determinations of copyright violation. The question under factor one is the purpose and character of the use, not of the alleged infringer.'"); Marobie-FL, Inc. v. Nat'l Ass'n of Fire Equip. Distribs., 983 F. Supp. 1167, 1175 (N.D. Ill. 1997) ("The first factor—'the purpose and character of the use, including whether such use is of a commercial nature'—weighs in favor of plaintiff. NAFED is a non-profit organization and did not did not [sic] receive any compensation for placing the clip art on its Web Page. Yet, its

conduct may still be considered commercial."); Television Digest, Inc. v. U.S. Tel. Ass'n, 841 F.

Supp. 5, 9–10 (D.D.C. 1993) ("USTA places great reliance on the fact that it is a non-profit

organization. However this does not compel a finding of fair use.").

Likewise, MRC's argument that it generates "revenue" from its website, but does not

generate enough to "profit" from its website (Dkt. 26 at 25-26/34), is also irrelevant. Barcroft

Media, LTD., v. Coed Media Group, LLC, 16 Civ. 7634 (JMF), 2017 WL 5032993, at *7

(S.D.N.Y. Nov. 2, 2017) ("CMG's argument that its use of the Images was not commercial

because CMG's websites are unprofitable is unavailing: The commercial or nonprofit nature of a

venture is not determined by whether it was *successful* commercially.") (emphasis in original.);

Lish v. Harper's Magazine Found., 807 F. Supp. 1090, 1100–01 (S.D.N.Y. 1992), amended, 91

Civ. 0782 (MEL), 1993 WL 7576 (S.D.N.Y. Jan. 7, 1993) ("Finally, Harper's' argument that its

use was permissible, under the statute, as being for a 'non-profit educational' purpose because

Harper's is owned by a non-profit foundation and operates at a loss, is unpersuasive. …[T]he

mere fact that Harper's is a non-profit organization that operates at a loss does not preclude a

finding of 'commercial use'; non-profit organizations enjoy no special immunity from

determinations of copyright violation.").

Here, MRC engaged in a commercial use of the Photographs because it exploited the

Photographs to increase its advertising and donation revenue.  MRC admits that its website

"generates money." (Dunnegan Dec. Ex. G at 99:19-101:3 and 112:13-113:9)  The "better" the

content is on MRC's site, the more money it makes from advertising revenue. (Dunnegan Dec.

Ex. G at 118:6-123:12)  Indeed, one of the goals of MRC's employees was to generate "traffic"

to the website, and "traffic" generates advertising revenue for MRC.  (Dunnegan Dec. Ex. G at

118:6-123:19 and 129:10-130:5)  MRC admits it received advertising revenue in connection with

the Chesney Article and Kid Rock Article.  (Dkt. 26 at Statement of Indisputable Facts 34 and

55)  Furthermore, MRC admitted that the employee who posted the Chesney Photograph – who

MRC cannot identify – was "probably in the marketing department." (Dunnegan Dec. Ex. G at

14:5-18, 16:20-18:11, and 20:12-18)

In addition, the Kid Rock Article contained a donation link and solicitation (Dkt. 26-1 at

¶ 33), through hyperlinked text on the Kid Rock Article, which stated:

> "**Thank you for supporting MRCTV!  As a tax-deductible, charitable organization,
> we rely on the support of our readers to keep us running!  Keep MRCTV going with
> your gift here!**" (Emphasis and color in original) (Dkt. 26-1 at Ex. A-2)

MRC admits it may have received donation revenue from the Kid Rock Article. (Dkt. 26 at

Statement of Indisputable Facts 56)

Accordingly, a reasonable juror has more than a sufficient basis to find that MRC's use of

the Photographs was commercial.

2.   MRC's Use Of The Photographs Was Not Transformative.

Under Factor One, the Court should also determine whether MRC's use was

transformative.  Transformative use generally exists in two forms: (i) an alteration of the work

which changes the "expression, meaning or message" of the work, or (ii) use of the work for a

different purpose than the original author intended. See Campbell, 510 U.S. at 579 ("The central

purpose of this investigation is to see, in Justice Story's words, whether the new work merely

'supersede[s] the objects' of the original creation, ('supplanting' the original), or instead adds

something new, with a further purpose or different character, altering the first with new

expression, meaning, or message; it asks, in other words, whether and to what extent the new

work is 'transformative.'") (citations omitted); A.V. ex rel. Vanderhye v. iParadigms, LLC, 562

F.3d 630, 638 (4th Cir. 2009) ("A 'transformative' use is one that 'employ[s] the quoted matter

in a different manner or for a different purpose from the original,' thus transforming it.");

Authors Guild v. Google, Inc., 804 F.3d 202, 214 (2d Cir. 2015), cert. denied sub nom. The

Authors Guild v. Google, Inc., 136 S. Ct. 1658 (2016) ("The more the appropriator is using the

copied material for new, transformative purposes, the more it serves copyright's goal of

enriching public knowledge and the less likely it is that the appropriation will serve as a

substitute for the original or its plausible derivatives, shrinking the protected market

opportunities of the copyrighted work.").  Although "transformative use is not absolutely

necessary for a finding of fair use," Campbell, 510 U.S. at 579, where the "use 'is for the same

intrinsic purpose as [the copyright holder's] ... such use seriously weakens a claimed fair use.'"

Oracle Am., Inc. v. Google Inc., 750 F.3d 1339, 1375 (Fed. Cir. 2014).

     a.  MRC Did Not Use The Photographs For A Transformative Purpose.

     MRC's use of the Photographs did not have a transformative purpose.  MRC argues it

had a transformative purpose because it was "news reporting" and commenting on "issues of

public concern."   However, there is no general "news" exception. Harper & Row, 471 U.S. at

561 ("The fact that an article arguably is 'news' and therefore a productive use is simply one

factor in a fair use analysis."); Nunez v. Caribbean Int'l News Corp., 235 F.3d 18, 22 (1st Cir.

2000) ("This is not to say that appellee's use of the photographs was necessarily fair merely

because the photographs were used for news purposes, nor does it establish a general

'newsworthiness' exception.").

     As the Fourth Circuit has held, a use is not transformative if it merely serves the same

purpose as the copyright holder intended. Bouchat, 619 F.3d at 309 ("While the films no doubt

add to the historical record of Ravens play, the use of the logo in those films simply fulfilled its

purpose of identifying the team. The logo continues to fulfill that purpose whenever a highlight

film is shown. Two hypothetical circumstances illustrate our point. In the first, an individual at home in her living room in 1996 watches a Ravens football game on television. The Flying B logo on the helmets of one team helps her identify the team as the Ravens. In the second, an individual at home today (2010) in his living room watches the 1996 Ravens season highlight film. The Flying B logo on the helmets of one team helps him identify the team as the Ravens. The logo plays the same role in each example. Its purpose is not transformed in the highlight film, viewed some fourteen years later.") (emphasis added.); Accord Balsley v. LFP, Inc., 691 F.3d 747, 759 (6th Cir. 2012) ("Defendant's use of the photograph was the same as Durocher's original use—to shock, arouse, and amuse. Defendant argues that its use was transformative because the original work was published on lenshead.com to depict the fact that Bosley participated in the wet t-shirt contest, whereas Defendant used the picture to 'illustrate its entertainment news story.' We disagree with this tenuous assertion."); Psihoyos v. Nat'l Exam'r, 97 Civ. 7624 (JSM), 1998 WL 336655, at *3 (S.D.N.Y. June 22, 1998) ("The Examiner's use is not transformative, because its piece uses the photo to show what it depicts. It is clear from examining the Examiner's article that its purpose was not to comment on the Psihoyos' photo but to use it 'for precisely a central purpose for which it was created'—to show how an art car looks. Thus, the Examiner's use is not transformative.").

Rather, to establish transformative use based on "news reporting" or "commenting on issues of public concern," a defendant must show the copyrighted work *itself* is relevant to the newsworthy event, as opposed to being used for the purpose intended by the copyright owner. Barcroft Media, LTD, 2017 WL 5032993, at *6 ("Display of a copyrighted image or video may be transformative where the use serves to illustrate criticism, commentary, or a news story *about* that work. For instance, a news report about a video that has gone viral on the

18

Internet might fairly display a screenshot or clip from that video to illustrate what all the fuss is about.  Similarly, a depiction of a controversial photograph might fairly accompany a work of commentary or criticism about the artistic merit or appropriateness of the photograph.  In each such case, the copyrighted work is itself the subject of the story, transforming the function of the work in the new context. . . .  CMG's articles did not comment on, criticize, or report news *about the Images themselves*; instead, they used the Images as illustrative aids because they depicted the subjects described in its articles. CMG's argument, if accepted, would eliminate copyright protection any time a copyrighted photograph was used in conjunction with a news story about the subject of that photograph. That is plainly not the law.") (citations omitted) (emphasis in original.).

Here, MRC's purpose, and Philpot's purpose, were the same.  Philpot intended, among other things, for licensees to use the Chesney Photograph and Kid Rock Photograph to clearly identify Chesney and Kid Rock for the purpose of visually enhancing articles about the performers. (Philpot Dec. ¶ 13)  MRC used the Chesney Photograph and Kid Rock Photograph to clearly identify Chesney and Kid Rock, for the purpose of visually enhancing articles about the performers. (Dunnegan Dec. Ex. G at 35:17-37:3 and 139:12-17 and Ex. H at 16:8-17:6; Dkt. 26-1 at Exs. A-1 and A-2)

MRC's cases are therefore distinguishable.  In Nunez, modeling photographs were intended to be part of a portfolio, but became news when a debate arose about whether a beauty pageant queen should retain her title, in light of having modeled for them. Nunez v. Caribbean Int'l News Corp., 235 F.3d 18, 23 (1st Cir. 2000) ("Rather, what is important here is that plaintiffs' photographs were originally intended to appear in modeling portfolios, not in the newspaper; the former use, not the latter, motivated the creation of the work. Thus, by using the

19

photographs in conjunction with editorial commentary, El Vocero did not merely 'supersede[ ] the objects of the original creation[s],' but instead used the works for 'a further purpose,' giving them a new 'meaning, or message.'); Compare Monge v. Maya Magazines, Inc., 688 F.3d 1164, 1175–76 (9th Cir. 2012) ("Even if the photos were not physically or creatively transformed, Maya claims that publication of the photos as an exposé amounted to transformation. In other words, Maya's publication transformed the photos from their original purpose—images of a wedding night—into newsworthy evidence of a clandestine marriage. In support, Maya relies heavily on Núñez, a First Circuit case that is distinguishable… Although Núñez also involved news reporting, the similarities end there. The controversy there was whether the salacious photos themselves were befitting a 'Miss Universe Puerto Rico,' and whether she should retain her title. In contrast, the controversy here has little to do with photos; instead, the photos here depict the couple's clandestine wedding. The photos were not even necessary to prove that controverted fact—the marriage certificate, which is a matter of public record, may have sufficed to inform the public that the couple kept their marriage a secret for two years.") (emphasis added.).

Likewise, in Caner, Ascend Health Corp., and Hoge, the defendants used the plaintiffs' copyrighted works to criticize the copyrighted work itself, or criticize the plaintiff. Caner v. Autry, 16 F. Supp.3d 689, 710 (W.D. Va. 2014) ("Clearly, Defendant posted the Count One Video for the transformative purpose of criticizing Plaintiff."); Ascend Health Corp. v. Wells, 12 Civ. 00083 (WEB), 2013 WL 1010589, at *13 (E.D.N.C. Mar. 14, 2013) ("Wells uses the images for a different reason, that being, to criticize the two companies."); Hoge v. Schmalfeldt, 14 Civ. 1683 (ELH), 2014 WL 3052489, at *14 (D. Md. July 1, 2014) ("As I see it, defendant has a viable claim that he used plaintiff's materials in a 'transformative' manner and, arguably,

for the purposes of 'criticism, comment, [or] news reporting,' as recognized in Section 107. . . In other words, defendant has taken one comment found on *Hogewash!* and included it in his own posting, in order to provide his own statement in response").

Similarly, in Bill Graham, and in certain uses in Bouchat (Dkt. 26 at 24/34), the defendants commented on the works themselves, by presenting them as "source material" in an "historic scholarship" or "museum-like setting."  Bill Graham Archives v. Dorling Kindersley Ltd., 448 F.3d 605, 609 (2d Cir. 2006) ("Preliminarily, we recognize, as the district court did, that *Illustrated Trip* is a biographical work documenting the 30-year history of the Grateful Dead. While there are no categories of presumptively fair use, see Campbell v. Acuff-Rose Music, Inc., 510 U.S. at 584, 114 S.Ct. 1164, courts have frequently afforded fair use protection to the use of copyrighted material in biographies, recognizing such works as forms of historic scholarship, criticism, and comment that require incorporation of original source material for optimum treatment of their subjects."); Bouchat, 619 F.3d at 314 ("These depictions of the logo are consistent with the fair use display of copyrighted material in a museum.").[2]

Here, MRC reported news, or provided commentary, in the articles, but the news or commentary was not about the circumstances of the Photographs.  MRC did not (i) comment on the Photographs, (ii) comment on the specific events captured by the Photographs, or (iii) use the Photographs to comment on Philpot.  MRC admitted it could have used any photograph of Kid

---

[2]In Vanderhye and Perfect 10 (Dkt. 26 at 24/34), the defendants used the works in a way completely unrelated to the copyrightable expression. A.V. ex rel. Vanderhye v. iParadigms, LLC, 562 F.3d 630, 640 (4th Cir. 2009) ("iParadigms' use of these works was completely unrelated to expressive content and was instead aimed at detecting and discouraging plagiarism."); Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1166 (9th Cir. 2007) ("We conclude that the significantly transformative nature of Google's search engine, particularly in light of its public benefit, outweighs Google's superseding and commercial uses of the thumbnails in this case.").  MRC's use clearly does not fit this exception.

Rock or Chesney to illustrate the Kid Rock Article and Chesney Article. (Dunnegan Dec. Ex. G at 137:18-138:22 and Ex. H at 16:8-17:6)  In fact, MRC admitted that it could have reported the same news or commentary without any photographs. (Dunnegan Dec. Ex. G at 143:14-144:2) Thus, MRC's use of the Photographs was not "transformative."

  b.  MRC Did Not Physically Transform the Kid Rock Photograph.

MRC's argument that it physically "transformed" the Kid Rock Photograph by cropping it, and placing a banner over it, fails for two reasons.

First, MRC reproduced, and publicly displayed, the uncropped, un-bannered, Kid Rock Photograph on the Kid Rock Photograph URL. (Dunnegan Dec. Ex. L)

Second, a physical alteration must add "new expression, meaning, or message" to be transformative. Campbell, 510 U.S. at 579.  Cropping some background, and placing a headline over a portion of the Photograph does not change its meaning. Balsley v. LFP, Inc., 691 F.3d 747, 759 (6th Cir. 2012) ("We must next consider whether there was anything 'transformative' in Defendant's use of the Bosley photograph. The picture was unaltered other than for minor cropping and was merely reprinted in a different medium—a magazine rather than a website— essentially serving as a market replacement. Although reprinting a photograph may not result in an automatic copyright violation, we agree that Defendant did not add any creative message or meaning to the photograph.") (citation omitted); See N. Jersey Media Grp. Inc. v. Pirro, 74 F. Supp. 3d 605, 617 (S.D.N.Y. 2015) ("The Combined Image used by Fox News surely altered the content and message of the Work, but only minimally. Certainly, the alterations do not begin to approach the alterations found to be transformative as a matter of law in Cariou and Blanch. It therefore cannot be said that Fox News presented an 'entirely different aesthetic' from the Franklin photograph.").

Thus, MRC did not physically transform the meaning of the Kid Rock Photograph.

As MRC's use was both commercial and not transformative, the first factor weighs heavily against a finding of fair use.  If the first factor weighs against a finding of fair use, indicating that there is no justification for a defendant's use, a defendant probably will not prevail on a fair use defense.

B.      Factor Two: The Nature Of The Copyrighted Work, Is Neutral.

"This factor calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." Campbell, 510 U.S. at 586.  This factor is entitled to little weight.  See N. Jersey Media Grp. Inc, 74 F. Supp.3d at 623 ("The second factor weighs in favor of fair use, but that factor is only rarely determinative and is not so in this case.").

MRC previously admitted that "the photographs are creative works." (Dkt. 12 at 9/14) Now, MRC argues, without support, that the photographs are "more factual than creative." (Dkt. 26 at 27/34)  While Philpot's works captured real world events, they also required substantial creativity, artistic skill, and experience to create.  A reasonable jury could find that this factor weighs in favor of Philpot, or is neutral.

C.      Factor Three: The Amount And Substantiality Used, Favors Philpot.

The third factor addresses the amount and substantiality of the work used. Campbell, 510 U.S. at 586-87 ("The third factor asks whether 'the amount and substantiality of the portion used in relation to the copyrighted work as a whole,' § 107(3) (or, in Justice Story's words, 'the quantity and value of the materials used,') are reasonable in relation to the purpose of the copying. . . [T]his factor calls for thought not only about the quantity of the materials used, but about their quality and importance, too.") (citation omitted).  "While wholesale copying does not

preclude fair use per se, copying an entire work militates against a finding of fair use." Reiner v.

Nishimori, 15 Civ. 00241 (WDC), 2017 WL 1545589, at *7 (M.D. Tenn. Apr. 28, 2017)

(quoting Balsley v. LFP, Inc., 691 F.3d 747, 760 (6th Cir. 2012)).

Here, MRC quantitatively used more of each Photograph than necessary, and

qualitatively used the "heart" of each Photograph.[3]  MRC offers no reason why it could not

accomplish the purpose it purports to have with a dramatically smaller portion of the

Photographs.  Indeed, MRC admitted that it used more of the Kid Rock Photograph than

necessary. (Dunnegan Dec. Ex. G at 145:4-145:13)  Thus, MRC argues that the Court should

ignore factor three because MRC's use was "transformative" under factor one.  (Dkt. 26 at 27-

28/34)

This factor weighs in favor of Philpot, or at least a jury could so find.

D.      Factor Four: The Harm To The Potential Market, Favors Philpot.

The fourth factor "requires courts to consider not only the extent of market harm caused

by the particular actions of the alleged infringer, but also 'whether unrestricted and widespread

conduct of the sort engaged in by the defendant ... would result in a substantially adverse impact

on the potential market' for the original." Campbell, 510 U.S. at 590.

While MRC argues there was no market because Philpot licensed the works "for free,"

the requirement of attribution as a condition for lawful use of a copyrighted work provides a

meaningful benefit to the copyright owner. Jacobsen v. Katzer, 535 F.3d 1373, 1379 (Fed. Cir.

2008) ("The lack of money changing hands in open source licensing should not be presumed to

mean that there is no economic consideration, however. There are substantial benefits, including

_____

[3] Exhibit A to the Complaint is Philpot's cropped version of the Chesney Photograph that
was included in the '624 Copyright Registration deposit.  The cropped version removes some
content, changing the photograph from a landscape to a portrait.

economic benefits, to the creation and distribution of copyrighted works under public licenses that range far beyond traditional license royalties … Similarly, a programmer or company may increase its national or international reputation by incubating open source projects … The Eleventh Circuit has recognized the economic motives inherent in public licenses, even where profit is not immediate."); Accord Artifex Software, Inc. v. Hancom, Inc., 16 Civ. 06982 (JSC), 2017 WL 1477373, at *3 (N.D. Cal. Apr. 25, 2017).

Furthermore, the availability of a commercially reasonable license, such as the Creative Commons attribution license, weighs against a finding of fair use, not in favor of it. Cambridge Univ. Press v. Patton, 769 F.3d 1232, 1276–77 (11th Cir. 2014) ("Nevertheless, 'it is sensible that a particular unauthorized use should be considered 'more fair' when there is no ready market or means to pay for the use, while such an unauthorized use should be considered 'less fair' when there is a ready market or means to pay for the use. The vice of circular reasoning arises only if the availability of payment is conclusive against fair use.'") (quoting Am. Geophysical Union v. Texaco Inc., 60 F.3d 913, 931 (2d Cir. 1994)).

Here, Philpot has produced evidence establishing a market, or at least a potential market, for the Photographs through evidence that he offered reasonable licenses for the Photographs in two ways: (i) licenses for use in exchange for a monetary payment, and (ii) licenses for use without monetary payment, but with attribution to Philpot. (Philpot Dec. ¶¶ 6, 12, 13)  For the monetary payment licenses, Philpot produced screenshots of his website offering to license Philpot's photographs for a fee. (Philpot Dec. Ex. E)  As MRC acknowledges, Philpot received monetary payments, in response to letters and settlement agreements, from users who used Philpot's photographs without attribution. (Dkt. 26 at 31/34; Philpot Dec. ¶ 12)  For the attribution licenses, Philpot produced (i) the Wikimedia pages with the Creative Commons

attribution license terms (Philpot Dec. ¶ 6 and Exs. A and B; Dunnegan Dec. Ex. I), and (ii) screenshots of third parties using Philpot's works and providing attribution. (Philpot Dec. Ex. C) MRC admitted the reasonableness of the Creative Commons attribution license, by admitting that (i) MRC had the technical capability to provide attribution (Dunnegan Dec. Ex. F at ¶ 95), and (ii) it would have been "easy" to provide attribution to Philpot. (Dunnegan Dec. Ex. G at 78:22-79:13)  Indeed, MRC provided attribution to other organizations. (Dkt. 26-1 at Ex. A-1) Both the "attribution" and "fee payment" markets fit into Philpot's overarching goal of becoming a well-known music photographer, thereby increasing the value of his work. (Philpot Dec. ¶¶ 5, 6 and 13)

MRC acknowledges Philpot's evidence of a market, and fails to produce evidence to the contrary. (Dkt. 26 at 30-31/34)  Accordingly, MRC fails to show, as a matter of law, that widespread use of the Chesney and Kid Rock Photographs in connection with Internet articles about Chesney and Kid Rock – for free and without attribution – would not harm the Photographs' market, or potential market.

MRC's cases are distinguishable.  Both <u>Hustler</u> and <u>National Rifle</u> involved materials sent to groups on the opposite of the political spectrum of the intended market, for the purpose of generating outrage. <u>Hustler Magazine Inc. v. Moral Majority Inc.</u>, 796 F.2d 1148, 1156 (9th Cir. 1986) ("Although the Defendants used the parody for a commercial purpose in the sense that they profited from copying it, they did not actually sell the copies to willing buyers. Instead the Defendants used the copies to generate moral outrage against their 'enemies' and thus stimulate monetary support for their political cause."); <u>Nat'l Rifle Ass'n of Am. v. Handgun Control Fed'n of Ohio</u>, 15 F.3d 559, 560 (6th Cir. 1994) ("On June 14, 1989, HCF mailed a ten-page newsletter to about 200 of its members, attempting to arouse support for the same House bill the NRA

opposed."). Such use would not interfere with the plaintiff's "market" because the specific

recipients would never have participated in that market. MRC did not reproduce and publicly

display Philpot's Photographs for the purpose of generating outrage at the Photographs, or at

Philpot. Instead, MRC supplanted Philpot's market for licensing the Photographs for use on the

Internet in connection with articles about the performers. In fact, because third-parties could find

MRC's unattributed uses on the Internet for a substantially long time, Philpot does not know

whether MRC's uses led others in his market to infringe. (Philpot Dec. ¶¶ 10, 11; Dunnegan Dec.

Exs. K and L)

Likewise, MRC's reliance on Reiner is misplaced. In Reiner, the plaintiff never offered

the photograph through a Creative Commons license, and instead offered licenses only within a

narrow market. Reiner, 2017 WL 1545589, at *3 ("Reiner intended to market 'Casablanca' to a

high-end liquor company, but has never licensed or sold the piece for private use."). Thus,

Reiner involves a fact pattern where the copyright owner had no intention of exploiting the

market in which the defendant used the copyrighted work.

As factors – especially factor one and factor four – weigh against a finding of fair use,

MRC fails to establish fair use as a matter of law.

### III.

### THE FIRST AMENDMENT DOES NOT INSULATE
### MRC FROM LIABILITY

There is no "First Amendment" defense to copyright infringement, because the Copyright

Act sufficiently safeguards First Amendment rights. Harper & Row Publishers, Inc. v. Nation

Enterprises, 471 U.S. 539, 555-60 (1985) ("Respondents, however, contend that First

Amendment values require a different rule under the circumstances of this case. The thrust of the

decision below is that '[t]he scope of [fair use] is undoubtedly wider when the information

27

conveyed relates to matters of high public concern'. . . The Second Circuit noted, correctly, that copyright's idea/expression dichotomy 'strike[s] a definitional balance between the First Amendment and the Copyright Act by permitting free communication of facts while still protecting an author's expression.' . . .  The promise of copyright would be an empty one if it could be avoided merely by dubbing the infringement a fair use 'news report' of the book. . . . In view of the First Amendment protections already embodied in the Copyright Act's distinction between copyrightable expression and uncopyrightable facts and ideas, and the latitude for scholarship and comment traditionally afforded by fair use, we see no warrant for expanding the doctrine of fair use to create what amounts to a public figure exception to copyright.").

Accordingly, MRC's "First Amendment defense" fails.

Conclusion

For the reasons set forth above, Philpot respectfully requests that the Court deny MRC's motion to for summary judgement.

Dated: November 15, 2017

RIEBLING IP, PLLC

By:   */s/ Peter J. Riebling*
Peter J. Riebling (VSB # 37467)
1717 Pennsylvania Avenue, N.W.
Suite 1025
Washington, D.C. 20006-3591
Phone: (202) 631-2021
peter.riebling@rieblinglaw.com

-and-

DUNNEGAN & SCILEPPI LLC
350 Fifth Avenue
New York, New York 10118

*Attorneys for Plaintiff Larry Philpot*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on November 15, 2017, I electronically filed the foregoing PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT with the Court's CM/ECF system, which will send a copy of the foregoing on the following:

David A. Warrington
Alexander R. Green
LeClairRyan
2318 Mill Road, Suite 1100
Alexandria, Virginia 22314
david.warrington@leclairryan.com
alexander.green@leclairryan.com
*Counsel for Media Research Center Inc.*

/s/ Peter J. Riebling
Peter J. Riebling (VSB # 37467)
RIEBLING IP, PLLC
1717 Pennsylvania Avenue, N.W., Suite 1025
Washington, D.C. 20006-3591
(202) 631-2021
peter.riebling@rieblinglaw.com

***Counsel for Larry Philpot***