**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

LARRY PHILPOT,                    )
    **Plaintiff,**                 )
                               )    **Case No. 1:17-cv-822**
    **v.**                        )
                               )
**MEDIA RESEARCH CENTER INC.,**   )
    **Defendant.**                 )

## MEMORANDUM OPINION

The central dispute in this copyright infringement action is whether defendant's use of two of plaintiff's photographs of famous musicians to accompany online articles about those musicians' political views constitutes fair use of the photographs, not impermissible infringement.

### I.

The following facts are derived from the facts contained in defendant's list of undisputed facts that plaintiff does not oppose.  Pursuant to E.D. Va. Local Rule 56(B), "each brief in support of a motion for summary judgment shall include a specifically captioned section listing all material facts" the moving party alleges to be undisputed.  In its response, the non-moving party must include "a specifically captioned section listing all material facts as to which it is contended there exists a genuine issue necessary to be litigated" and must cite parts of the record relied on to support the facts alleged.  *Id.* Defendant complied with the requirement and plaintiff, for the most part, did not contest the listed facts, but instead added additional facts.  Those additional facts are noted below where relevant and supported by admissible record facts.

*The Parties*

- Plaintiff, Larry Philpot, has worked as a professional photographer since 2007 and 2008.

- As a part of his work, plaintiff photographs musical artist in concert.

- Plaintiff posts his photographs on websites like Wikimedia, in part, to achieve greater fame, making his photographs more valuable in the long-term.

- Defendant, Media Research Center Inc., is an IRS approved 501(c)(3) non-profit organization with its principal place of business in Reston, Virginia.

- Defendant publishes news and commentary regarding issues of public debate in order to expose and critique media bias against American Judeo-Christian religious beliefs.

- Defendant operates a website, www.mrctv.org ("MRCTV"), to broadcast conservative values, culture, politics, and liberal media bias and to entertain the public.  Plaintiff adds that defendant also owns MRCTV to generate revenue for MRC via donations and advertising revenue.

## Chesney Photograph and Pro-Life Article

- The Chesney Photograph depicts Kenny Chesney performing in concert.

- Plaintiff took the Chesney Photograph to depict Chesney performing in concert; plaintiff did not take the photograph to provide commentary on Chesney's political beliefs. Plaintiff adds that plaintiff created the Chesney Photograph for an additional purpose, namely to enhance visually articles about Chesney.

- Plaintiff owns a copyright for the Chesney Photograph.

- Plaintiff uploaded the Chesney Photograph to the Wikimedia website, where the photograph was available for use, subject to a Creative Commons attribution license, version 3.0 ("CCL").

- The CCL does not require users to provide monetary compensation for use of the Chesney Photograph, but it does require licensees to identify plaintiff as the author of the Chesney Photograph.

- The only remuneration plaintiff has ever received for the Chesney Photograph is the undisclosed sums plaintiff received in connection with demand letters plaintiff sent to alleged infringers.  The record is devoid of any information about the amount of money plaintiff received, and it appears that plaintiff's interest is in artistic attribution, not financial remuneration, for the use of the Chesney Photograph.

- On or about January 22, 2015, defendant posted an article on MRCTV, entitled "'8 A-List Celebrities That Are Pro-Life" ("Pro-Life Article"), which included pictures of, and stories about, celebrities who are supportive of the pro-life movement.

- The Pro-Life Article contained plaintiff's Chesney Photograph alongside a discussion of a pro-life song written by Chesney.

- The Pro-Life Article did not attribute the Chesney Photograph to plaintiff.

- Defendant did not charge for access to the Pro-Life Article.

- From January 22, 2015 to September 22, 2017, defendant generated approximately $16.68 in revenue attributable to advertisements run on the webpage displaying the Pro-Life Article.

- From July 13, 2017 through October 10, 2017, defendant received approximately $50 in donations through the MRCTV website.  These donations may have been received through the link located on the webpage displaying the Pro-Life Article.

### Kid Rock Photograph and Senate Article

- The Kid Rock Photograph depicts Kid Rock performing in concert.

- Plaintiff took the Kid Rock Photograph to depict Kid Rock performing in concert; plaintiff did not know Kid Rock was running for U.S. Senate when plaintiff took Kid Rock's photograph. Plaintiff adds that plaintiff created the Kid Rock Photograph for an additional purpose, namely to enhance visually articles about Kid Rock.

- Plaintiff owns a copyright for the Kid Rock Photograph

- Plaintiff uploaded the Kid Rock Photograph to the Wikimedia website on or about September 2013, where the photograph was available for use, subject to a CCL.

- The CCL does not require users to pay to use the Kid Rock Photograph, but it does require licensees to identify plaintiff as the author of the Kid Rock Photograph.

- The only remuneration plaintiff has ever received for the Kid Rock Photograph is the undisclosed sums plaintiff received in connection with demand letters plaintiff sent to alleged infringers.  The record is devoid of any information about the amount of money plaintiff received, and it appears that plaintiff's interest is in artistic attribution, not financial remuneration, for the use of the Kid Rock Photograph.

- On or about July 13, 2017, defendant posted an article on MRCTV, entitled "Kid Rock Announces 2018 U.S. Senate Bid" ("Senate Article"), which discussed Kid Rock's announced campaign for election to the United States Senate.

- The Senate Article contained a cropped version of plaintiff's Kid Rock Photograph with a headline banner across the bottom of the photograph.

- The Senate Article did not attribute the Kid Rock Photograph to plaintiff.

- From July 13, 2017 until September 22, 2017, defendant generated approximately $9.89 in revenue attributable to advertisements run on the webpage displaying the Senate Article.

- From July 13, 2017 through October 10, 2017, defendant received approximately $50 in donations through the MRCTV website.  These donations may have been received through the link located on the webpage displaying the Senate Article.

On July 20, 2017, plaintiff initiated this copyright infringement action against defendant, seeking damages for defendant's allegedly unauthorized copying and public display of plaintiff's photographs of Kenny Chesney and Kid Rock.  Following completion of discovery, defendant, on November 1, 2017, filed the motion for summary judgment at issue here, arguing: (i) that plaintiff has waived his right to sue for copyright infringement by licensing the photographs; (ii) that defendant's use of the photographs falls under the "fair use" exception to copyright protections; and (iii) that defendant was exercising its First Amendment speech rights when it used the photographs.  Plaintiff opposes the motion, contending: (i) that defendant cannot use the license as a defense to the copyright infringement action; (ii) that defendant's use of the Chesney and Kid Rock Photographs does not fall within the "fair use" exception; and (iii) that the First Amendment does not insulate defendant from liability.

## II.

The standard of review on motions for summary judgment is too well-settled to warrant extensive discussion.  Under Rule 56, Fed. R. Civ. P., summary judgment is appropriate only where there is "no genuine dispute as to any material fact" such that the moving party "is entitled to judgment as a matter of law." *Celotex v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine dispute exists if "there is sufficient evidence on which a reasonable jury could return a verdict in favor of

4

the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating this question, courts must "view the evidence in the light most favorable to . . . the nonmovant." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The nonmovant, however, cannot rely on "mere allegations"; rather, the nonmovant "must set forth specific facts that go beyond the mere existence of a scintilla of evidence." *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013) (internal quotations and citations omitted).

### III.

The threshold question in this case is whether plaintiff waived his right to sue for copyright infringement by granting a nonexclusive license to use his copyrighted Chesney and Kid Rock Photographs. The Second Circuit has recognized that "[a] copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement." *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998). But where, as here, a nonexclusive license is terminated, the copyright owner may then sue the former licensee for copyright infringement in the event that the former licensee continues to use the copyrighted work. *Tattoo Art Inc. v. TAT Int'l LLC*, 498 F. App'x 341, 346 (4th Cir. 2012) ("In the post-termination context, TAT's continued display of the copyrighted works constituted infringement for the additional reason that TAT was contractually required to 'immediately cease all sales' of the stencils in light of Tattoo Art's notice of termination for breach.").

Here, it is clear that plaintiff granted a nonexclusive license for the use of his copyrighted material when he posted the Chesney and Kid Rock Photographs on Wikimedia under CCLs. The CCL is a worldwide, nonexclusive license that allows any party, to copy, distribute, transmit and adapt the work for free without seeking express permission. It is thus undisputed that

plaintiff offered the public nonexclusive licenses for both the Chesney and the Kid Rock Photographs.

First, plaintiff unpersuasively argues that defendant was not a party to the license because there was no meeting of the minds with respect to the terms of the license.  The flaw in this argument is that a license is not a contract; rather, a license is "permission to use a copyrighted work in a particular specified manner . . ." *Saxelbye Architects, Inc. v. First Citizens Bank & Tr. Co.*, 1997 WL 702290, at *3 (4th Cir. Nov. 3, 1997).  Indeed, "[a] nonexclusive license may be granted unilaterally by a copyright holder" so no meeting of the minds is required. *Crump v. QD3 Entm't, Inc.*, 2011 WL 446296, at *4 (S.D.N.Y. Feb. 8, 2011) (citation omitted). Accordingly, the mere fact that plaintiff uploaded the Photographs to Wikimedia under a nonexclusive CCL  is sufficient to grant a license to defendant.

But this does not end the analysis, as it is also clear that the CCL for both Photographs automatically terminates upon a licensee's breach of the licensee.  *See* Dunnegan Decl. Ex. I ("This License and the rights granted hereunder will terminate automatically upon any breach by You of the terms of this License.").  Here, the parties do not dispute that attribution was a material term of the license, and the parties agree that defendant publicly displayed the Photographs without attribution.  *See* Dunnegan Decl. Ex. F. ¶¶ 16-38, 96, 106.   Thus, a reasonable juror could find that defendant breached the license, and as a result, the license was terminated.  After termination of the license, defendant's continued use of the Chesney and Kid Rock Photographs would then be grounds for plaintiff's copyright infringement action provided there is no other defense, including fair use.

## IV.

Section 106 of the Copyright Act grants "a bundle of exclusive rights to the owner of the copyright," including the rights "to publish, copy, and distribute the author's work." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 546-47 (1985) (citing 17 U.S.C. § 106). These rights, however, are "subject to a list of statutory exceptions, including the exception for fair use provided in 17 U.S.C. § 107." *Bond v. Blum*, 317 F.3d 385, 393 (4th Cir. 2003), *abrogated on other grounds by Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979 (2016). If fair use, or another statutory exception, is established, then the use of the copyrighted work does not infringe on the copyright owner's exclusive rights. *See* 17 U.S.C. § 107.

The dispute here focuses on fair use and § 107 of the Copyright Act provides that the following factors must be examined to determine whether a copyrighted work's use in a particular case constitutes "fair use", including:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.

Supreme Court and Fourth Circuit precedent make clear that in weighing these factors, courts should not treat the factors in isolation, "but rather the results are to be weighed together, in light of the purposes of copyright." *Bouchat v. Balt. Ravens Ltd. P'ship. (Bouchat I)*, 619 F.3d 301, 307-08 (4th Cir. 2010) (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994) (internal quotation marks omitted)). At the same time, Fourth Circuit precedent has

"placed primary focus on the first factor." *Bouchat v. Balt. Ravens Ltd. P'ship. (Bouchat II)*, 737 F.3d 932, 937 (4th Cir. 2013). And the Supreme Court has noted the paramount importance of the fourth factor.  *Harper & Row Publishers, Inc.*, 471 U.S. at 566 ("This last factor is undoubtedly the single most important element of fair use.").  As such, the crux of the parties' fair use dispute focuses chiefly on the first and fourth factors.  As described below, the undisputed factual record points persuasively to the conclusion that defendant's use of the Chesney and Kid Rock Photographs constituted fair use.  Thus, defendant's motion for summary judgment must be granted.

## A.

The first fair use factor—"the purpose and character of the use"[1]—weighs in favor of defendant because the undisputed factual record reveals that defendant's use of the Chesney and Kid Rock Photographs is transformative and essentially noncommercial.  In this respect, the Fourth Circuit has adopted a two-part inquiry under this first factor, considering: (i) "whether the new work is transformative;" and (ii) "the extent to which the use serves a commercial purpose." *Bouchat II*, 737 F.3d at 939.  A work is transformative if, instead of "merely supersed[ing] the objects of the original creation," the new work "adds something new, with a further purpose or difference character, altering the first with new expression, meaning or message." *Campbell*, 510 U.S. at 578-79 (internal quotation marks omitted).[2]  Moreover, the Fourth Circuit has made clear that "[the use of copyrighted work] can be transformative in function or purpose without altering or actually adding to the original work." *A.V. ex rel. Vanderhye*, 562 F.3d at 639.

---

[1] 17 U.S.C. § 107(1).

[2] *See also A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 638 (4th Cir. 2009) ("A 'transformative' use is one that 'employ[s] the quoted matter in a different manner or for a different purpose from the original,' thus transforming it.").

These principles, applied here, compel the conclusion that defendant's use of the Chesney and Kid Rock Photographs was transformative.  The undisputed factual record discloses that the "expression," "meaning," and "message" of defendant's use of the Photographs here is plainly different from plaintiff's intended use of the Photographs.  Plaintiff testified that he was a professional photographer of musicians and that he took the Chesney and Kid Rock Photographs to depict the musicians in concert.  *See* Pl. Dep. 43:14-22.[3]  By contrast, defendant used the images for the purposes of news reporting and commentary on issues of public concern— namely, informing citizens about pro-life celebrities and conservative celebrities running for political office.  *See* Martin Decl. ¶¶ 15, 26.  Moreover, the photographs as used on defendant's website were surrounded by content and commentary unrelated to the musicians performing in concert; the Chesney Photograph was accompanied by Pro-Life song lyrics and the Kid Rock Photograph was alongside information about the 2018 U.S. Senate election in Michigan.  *See* Ex. A-1, A-2.  Plaintiff admitted that he in no way had this purpose in mind—identifying these celebrities as pro-life or candidates for U.S. Senate—at the time he took the photographs.  *See* Pl.

---

[3] Despite plaintiff's deposition testimony that his purpose in taking the Photographs was to depict the artists in concert, Pl. Dep. 43:14-16, 75:4-6, plaintiff subsequently filed an affidavit stating that his purpose in taking the Photographs was actually to "clearly identify Chesney and Kid Rock for the purpose of visually enhancing articles about the performers."  Pl. Decl. ¶ 13.  This appears to be nothing more than a litigation tactic on plaintiff's part, namely plaintiff is attempting to create a genuine dispute of material fact as to whether defendant's use of the Photographs was transformative by changing his explanation for taking the Photographs to match the explanation for using the Photographs offered by defendant.  But it is well settled that where "a party submits an affidavit that is inconsistent with a witness's deposition testimony, the contradictory affidavit is disregarded for purposes of summary judgment."  *Green v. Nat'l Archives & Records Admin.*, 992 F. Supp. 811, 822 (E.D. Va. 1998); *see also In Re Family Dollar FLSA Litig.*, 637 F.3d 508, 513 (4th Cir. 2011) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." (quoting *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984))).  Thus, plaintiff's inconsistent declaration cannot create a genuine dispute of material fact concerning whether plaintiff captured the Chesney and Kid Rock Photographs to show the artists in concert.

   Even assuming plaintiff's purpose in taking the Photographs was to enhance visually some unidentified future articles, defendant's use of the Photographs would nonetheless be transformative because although defendant used the Photographs to identify Kid Rock and Kenny Chesney and to enhance its articles, it did so for the additional purpose of identifying these celebrities as pro-life advocates and candidates for public office.

Dep. 44:21-45:2, 74:21-75:3.[4]   In sum, the defendant's use of the Chesney and Kid Rock Photographs is transformative because defendant's purpose in using the Photographs—to identify the celebrities as pro-life advocates or conservative Senate candidates—was different from plaintiff's purpose in taking the Photographs.

This conclusion is consistent with precedent from this circuit and elsewhere.  In a series of cases in which a copyright owner sued the Baltimore Ravens for using his copyrighted logo, the Fourth Circuit considered the transformative nature of various videos depicting the copyright owner's Ravens logo.  In *Bouchat I*, the Fourth Circuit found the use of the copyrighted logo in highlight reels from past seasons was not transformative because "[t]he use of the logo in the films serve[d] the same purpose that it did when defendants first infringed . . .", namely the logo "identifies the football player wearing it with the Baltimore Ravens." *Bouchat I*, 619 F.3d at 309. By contrast, in *Bouchat II*, the Fourth Circuit found that the use of the logo in videos summarizing the performance of players and highlighting the history of the team was transformative.  *Bouchat II*, 737 F.3d at 940.  The *Bouchat II* court noted that the season highlight films at issue in *Bouchat I* "did not change the way in which viewers experienced the logo, making the use non-transformative."  *Id.* at 941.  The performance summaries and historical videos in *Bouchat II*, by contrast, used the footage "to tell stories and not simply rehash the season," and as such, those videos were transformative.  *Id.*

Defendant's use of the Photographs much more closely resembles the use of the Baltimore Ravens logos in *Bouchat II* than the use of the logos in *Bouchat I*.  Unlike *Bouchat I*, defendant's use of the Chesney and Kid Rock Photographs changes the way in which viewers experience the Photographs.  Specifically, although in *Bouchat I*, the films "capture[d] the logo

---

[4] Indeed, plaintiff could not have had this purpose in mind because Kid Rock did not announce his plans to run for U.S. Senate until well after the photographs were taken.

as it originally appeared, and the logo remain[ed] a symbol identifying the Ravens,"[5] in this case, defendant captures the Chesney and Kid Rock Photographs as they originally appear but the Photographs do not solely remain Photographs identifying those celebrities as musicians. Rather, defendant's placing the Photographs alongside its MRCTV articles identifies these celebrities as pro-life advocates and possible conservative U.S. Senate candidates, thereby creating, as in *Bouchat II*, a "new expression, meaning, or message." *Campbell*, 510 U.S. at 579. As in *Bouchat II*, the Chesney and Kid Rock Photographs here "tell new stories" about the celebrities instead of simply rehashing their identities as musicians. *Bouchat II*, 737 F.3d at 941.

Notably, other circuits have determined that the use of photographs is transformative where, as here, the use serves purposes beyond mere artistic expression, by informing the public about a newsworthy event, providing commentary, or adding other social benefit. *See, e.g.*, *Perfect 10, Inc. v. Amazon.com Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007) (finding that the use of thumbnail images in search engines was transformative because the use "improv[ed] access to information on the [I]nternet" and provided a "social benefit by incorporating an original work into a new work"); *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 22-23 (1st Cir. 2000) (holding that the republication of photographs taken from a modeling portfolio in a newspaper was transformative because the photographs informed while also serving an entertainment function). Similarly, here, the use of the Chesney and Kid Rock Photographs in association with the Pro-Life and Senate Articles improves access to information and provides social benefit by allowing readers to identify the celebrities depicted as individuals who share their political views.

---

[5] *Bouchat I*, 619 F.3d at 309.

The cases plaintiff cites do not compel a contrary result. Thus, in *Balsey v. LFP Inc.*, 691 F.3d 747 (6th Cir. 2012), the Sixth Circuit determined that a defendant had not demonstrated that his use of a photograph was transformative as a matter of law. The *Balsey* case involved a photograph of a news reporter participating in a wet t-shirt concert that was subsequently published in a magazine as a part of a "Hot News Babe" contest. *Id.* at 747-49. The Sixth Circuit rejected the defendant's argument that the picture was published to "illustrate its entertainment news story" and considered it more likely that the photo, and the article in which it appeared, were simply used "to enhance readership, rather than as a social commentary." *Id.* at 759. By contrast here, there is no dispute here that defendant used the Chesney and Kid Rock Photographs as a part of articles providing social commentary and reporting on news. To be sure, the Chesney and Kid Rock Photographs may have enhanced defendant's articles visually, but the articles, together with the Photographs, were plainly used for the socially beneficial purposes of conveying a political message beyond merely enhancing readership. Accordingly, this case stands in stark contrast to *Balsey*.

Plaintiff also cites *Psihoyos v. Nat'l Exam'r*, 1998 WL 336655, at *3 (S.D.N.Y. June 22, 1998), which is also unpersuasive. The defendant there used a photograph of a car for precisely the same reason for which the photograph was created, namely to show the appearance of an art car, a car covered in artwork. *Id.* Here, by contrast, defendant is using the Chesney and Kid Rock Photographs for a purpose completely different from the purpose for which the Photographs were created, namely to identify certain celebrities as pro-life advocates or potential conservative Senate candidates. Thus, *Psihoyos*, like *Balsey*, is also unpersuasive here.

Plaintiff also argues, unpersuasively, that the photograph itself must newsworthy for the use of the photograph alongside a news article to be transformative. This is simply not the case.

Plaintiff bases his argument on dicta from an unpublished district court case, *Barcroft Media Ltd. v. Coed Media Grp. LLC*, 2017 WL 5032993 (S.D.N.Y. Nov. 2, 2017). But that case is neither controlling nor persuasive. In *Barcroft Media Ltd.*, the court considered whether a gossip website's use of paparazzi photographs of celebrities alongside articles about those celebrities constituted fair use. The court found that the plaintiffs took the photographs at issue "to document the comings and goings of celebrities, illustrate their fashion and lifestyle choices, and accompany gossip and news articles about their lives." *Id.* at *6. The defendant then used the photographs for precisely these purposes as the defendant posted the photographs alongside articles about the celebrities' fashion choices and gossip about their lives. *Id.* Here, by contrast, plaintiff took the Chesney and Kid Rock Photographs to depict the musicians in concert. *See* Pl. Dep. 43:14-16, 74:13-17; *see also id.* at 74:8-17, 75:4-6. Had defendant used the Chesney and Kid Rock Photographs alongside articles about the concerts depicted, then that use might not have been transformative. But importantly, defendant here used the Photographs in a completely different context, namely to identify these celebrities as pro-life advocates or conservative candidates for office.

In sum, because defendant used the Chesney and Kid Rock Photographs in a new context, to tell new stories about the musicians as pro-life advocates or candidates for office, defendant's use of the Photographs was transformative.

The second part of the inquiry under the first fair use factor is whether the use of copyrighted work is commercial in nature. The undisputed factual record discloses that defendant's use of the Chesney and Kid Rock Photographs was not essentially commercial. At most, defendant's use of the Photographs might be considered commercial only insofar as defendant received very small amounts of revenue ($26.57) through advertisements on the

webpages associated with the articles and may have received minor donations ($50) through links on the webpages associated with the articles.

At the same time, the undisputed factual record reveals that defendant does not charge readers for access to its articles, nor did it sell the Chesney and Kid Rock photographs to other parties. *See* Martin Decl. ¶¶ 20, 31. Instead, defendant's articles were available for free to anyone accessing the Internet. *Compare Nunez*, 235 F.3d at 22 (finding use was commercial where "[t]he photographs were used in part to create an enticing lead page that would prompt readers to purchase the newspaper"). Moreover, defendant is a nonprofit organization and its mission is to expose and critique media bias against what it views as traditional American Judeo-Christian religious beliefs, not to increase its own profits. *See* Martin Decl. ¶¶ 3-4. Accordingly, defendant's use of the Chesney and Kid Rock photographs is "more incidental and less exploitative" than the commercial use typically seen in copyright infringement cases. *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818 (9th Cir. 2003) (finding "use of [copyrighted work] was more incidental and less exploitative in nature than more traditional types of commercial use" where defendant did not use images directly to promote the website nor did defendant try to profit by selling the images directly).

In sum, the record discloses that even assuming defendant's use of the Chesney and Kid Rock Photographs produced a very small amount of revenue, it was far from essentially commercial. Given this and given that the Supreme Court has recognized that any commercial use is not determinative in and of itself,[6] this factor does not outweigh the transformative nature of defendant's use of the Photographs.

---

[6] *Sony Corp. of Am. V. Universal City Studios, Inc.*, 464 U.S. 417, 448-49 (1984) ("Although not conclusive, the first factor requires that "the commercial or nonprofit character of an activity" be weighed in any fair use decision.")

**B.**

The second factor—"the nature of the copyrighted work"[7]—is neutral.  To begin with, where, as here, the copyrighted work is published,[8] the fair use is broader in scope.  *See A.V. ex rel. Vanderhye*, 562 F.3d at 640 (citing *Harper & Row Publishers, Inc.*, 471 U.S. at 555).  But the Supreme Court has also instructed that "fair use is more likely to be found in factual works than in fictional works," and "a use is less likely to be deemed fair when the copyrighted work is a creative product."  *Stewart v. Abend*, 495 U.S. 207, 237 (1990) (internal quotation marks and alteration omitted).  The Chesney and Kid Rock Photographs are likely both factual and creative—the Photographs are factual insofar as they depict the celebrities in concert, and the Photographs are creative insofar as the photographer made judgments about lighting, lens speed, and angle in capturing the Photographs.[9]  Accordingly, this factor is neutral.

**C.**

The third fair use factor considers the "amount and substantiality of the portion used in relation to the copyrighted work as a whole."[10]  Generally, as the amount of copyrighted material that is used increases, the likelihood of fair use decreases.  Here, defendant used all of Chesney Photograph and only slightly cropped plaintiff's photograph of Kid Rock.  Accordingly, this factor weighs against a fair use finding.  *See Reiner v. Nishimori*, 2017 WL 1545589 (M.D.

---

[7] 17 U.S.C. § 107(2).

[8] It is undisputed that plaintiff published the Chesney and Kid Rock Photographs by posting them on the Internet and allowing free use with attribution.

[9] Circuits have decided whether photographs are creative or factual in different ways.  The Ninth Circuit has held that "[p]hotographs that are meant to be viewed by the public for informative and aesthetic purposes . . . are generally creative in nature." *Kelly*, 336 F.3d at 820.  At the same time, the First Circuit has held that photographs are both factual and creative, *Nunez*, 235 F.3d at 23, and the Sixth Circuit has noted that "photographs have varying degrees of creativity."  Balsey, 691 F.3d at 760.

[10] 17 U.S.C. § 107(3).

Tenn. Apr. 28, 2017) (quoting *Balsey*, 691 F.3d at 760) ("[C]opying an entire work militates against a finding of fair use.").

## D.

The final factor involves consideration of "the effect of the use upon the potential market for or value of the copyrighted work";[11] that is, whether "the defendants' [use of the work] would materially impair the marketability of the work and whether it would act as a market substitute for it." *Bouchat II*, 737 F.3d at 943.[12]  In this regard, courts have considered "(i) "the extent of market harm caused by the particular actions of the alleged infringer"; and (ii) "whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market." *Nunez v. Carribean Int'l News Corp.*, 235 F.3d 18, 24 (1st Cir. 2000) (quoting *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 110 (2d Cir. 1998)).

This factor, applied here, weighs in favor of a fair use finding because there is no showing on this record of any impact on any economic market for the Chesney or Kid Rock Photographs.  To begin with, it is undisputed that, to date, there has been no economic impact on any market for the Chesney and Kid Rock Photographs as a result of defendant's use of the photographs.  Indeed, on this record, there is no economic market for the Photographs.  Plaintiff admits that he posted his photographs on Wikimedia for use by others for free, rather than selling them for a profit, because his purpose in taking the Chesney and Kid Rock Photographs was to gain greater fame, not to make money.  Indeed, plaintiff admits that he has received no remuneration for use of the Chesney and Kid Rock Photographs outside of the litigation context.

---

[11] 17 U.S.C. § 107(4).

[12] *See also A.V. ex rel Vanderhye*, 562 F.3d at 643 ("The fair use doctrine protects against a republication which offers the copyrighted work in a secondary packaging, where potential customers, having read the secondary work, will no longer be inclined to purchase again something they have already read.").

*See* Pl. Dep. at 48:10-50:9, 77:15-18.[13]   Defendant's use of the Chesney and Kid Rock

Photographs cannot impair the marketability of plaintiff's works where, as here, plaintiff has not

actually contemplated marketing those works.  *See Am. Geophysical Union v. Texaco*, 60 F.3d

913 (2d Cir. 1994) (noting that the assertion that plaintiff has suffered some "adverse effect on

its potential licensing revenues as a consequence of [the defendant's use]" does not carry weight

if the defendant "filled a market niche that the [copyright owner] simply had no interest in

occupying").   Similarly, were defendant's use of the Photographs to become widespread,

plaintiff would not lose out on any revenue because plaintiff contemplated allowing parties to

use the Photographs for free.   In sum, because plaintiff offers his Chesney and Kid Rock

Photographs for free, plaintiff has not demonstrated that any market harm has resulted from

defendant's use of the Photographs or that any market harm would result were defendant's use of

the Photographs to become widespread.

Plaintiff argues that defendant's failure to attribute the Kid Rock and Chesney

Photographs diminished the future value of plaintiff's photographs because attribution would

make plaintiff famous, thereby making his Photographs more valuable "probably after [he]

die[s]."  Pl. Dep. 36:12-22.  This argument is unpersuasive because the Supreme Court has

recognized that courts evaluating the fourth fair use factor should consider whether a particular

use "produce[s] a harm cognizable under the Copyright Act."  *Campbell*, 510 U.S. at 591.  For

example, the Supreme Court in *Campbell* noted that because "there is no protectable derivative

market for criticism," courts should not consider harm to the market for parodies in evaluating

the fourth fair use factor.  *Id.*  These principles, applied here, point persuasively to the conclusion

---

[13] Congress plainly did not intend to preserve a market for copyright litigation when it enacted the Copyright Act so any impairment of the litigation market for plaintiff's Chesney and Kid Rock Photographs has no bearing on this analysis.  *See Campbell*, 510 U.S. at 591 (considering only "harm [s] cognizable under the Copyright Act in evaluating the market harm in the fourth fair use factor).

that future harm caused by lack of attribution should similarly be disregarded in evaluating the fourth fair use factor.  As with the derivative market for criticism, the Copyright Act does not provide an exclusive right to attribution.  *See* 17 U.S.C. § 106 (listing six exclusive rights in copyrighted works, not including the right to attribution).[14]  Accordingly, harm caused by lack of attribution is not generally cognizable under the Copyright Act[15] and should not be considered in evaluating the fourth fair use factor.[16]

Even assuming arguendo, it is proper to consider harm from lack of attribution under the fourth factor, the factor still weighs in favor of defendant because of this factor's overlap with the first fair use factor.  The Fourth Circuit has made clear that "[w]hen the use is transformative, market substitution is at least less certain, and market harm may not be so readily inferred." *Bouchat I*, 619 F.3d at 315 (quoting *Campbell*, 510 U.S. at 591).  And "when the use 'is for a noncommercial purpose, the likelihood of future market harm must be demonstrated' by the copyright holder." *Id.* (quoting *Sony*, 464 U.S. at 451) (internal quotation marks omitted).[17]

---

[14] *See also Gilliam v. ABC*, 538 F.2d 14, 20–21 (2d Cir. 1976) ("American copyright law, as presently written, does not recognize moral rights or provide a cause of action for their violation, since the law seeks to vindicate the economic, rather than the personal rights of authors."); *Hermosilla v. Coca-Cola Co.*, 419 F. App'x 917, 919 (11th Cir. 2001) (Recognizing that copyright law does not recognize a right to attribution); *UMG Recordings Inc. v. Disco Azteca Distribs.*, Inc., 446 F. Supp. 2d 1164, 1178 (E.D. Cal. 2006) (noting it is "well established that the right to attribution is not a protected right under the Copyright Act"); *Wolfe v. United Artists Corp.*, 583 F. Supp. 52, 56 (E.D. Pa. 1983) (noting "failure to give plaintiff proper authorship credit in the Works" and others "are not Copyright act claims").  The Visual Artists Rights Act of 1990 does include a right of attribution, but plaintiff does not contend that Act applies here.

[15] *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 155 (1975) ("[I]f an unlicensed use of a copyrighted work does not conflict with an 'exclusive' right conferred by the [Copyright Act], it is no infringement of the holder's rights.").

[16] Plaintiff cites to *Jacobsen v. Katzer* for the proposition that "there are substantial benefits, including economic benefits, to the creation and distribution of copyrighted works under public licenses that range far beyond traditional license royalties." 535 F.3d 1373, 1379 (Fed. Cir. 2008).  But that case is neither apposite nor persuasive; the *Jacobsen* case did not involve a fair use determination so the opinion's dicta have no bearing on analysis of the fourth factor in a fair use defense.

[17] *Princeton Univ. Press v. Mich. Document Servs., Inc.*, 99 F.3d 1381, 1385 (6th Cir. 1996) ("The burden of proof as to market effect rests with the copyright holder if the challenged use is of a 'noncommercial' nature."); *Nat'l Rifle Ass'n of Am. v. Handgun Control Fed'n*, 15 F.3d 559, 561 (6th Cir. 1994) (finding the final factor weighs in plaintiff's favor if she can "show[] that the purpose or character of the use was commercial"); *Hustler Magazine,*

Here, as described *supra* Section IV.A, defendant's use of the Chesney and Kid Rock Photographs was both transformative and essentially noncommercial.[18]   Accordingly, market harm may not be readily inferred and must be demonstrated by the copyright holder.   Plaintiff, however, has failed to point to any record evidence of concrete market harm, referring only to speculative future harm from a lack of attribution.   Indeed, plaintiff's entire argument rests on his assertion that if he becomes famous, his photographs will become more valuable someday, most likely after his death.   *See* Pl. Dep. 36:12-22.[19]   Plaintiff has not suggested that he plans to remove his Chesney and Kid Rock photographs from Wikimedia or that he has plans to sell the Photographs.   Nor is there any evidence in the record to support plaintiff's contention that attribution will meaningfully impact the value of his photographs.   Such unfounded speculation cannot support a finding of a likelihood of market harm.   *See A.V. ex rel. Vanderhye*, 562 F.3d at 645 (finding the fourth factor favored defendants where there was "nothing in the record to suggest that any of these scenarios envisioned by plaintiffs are anything more than unfounded speculation").

In sum, there is nothing in this record to suggest there is currently any market for the Chesney or Kid Rock Photographs or that any preparations have been made to establish or create a market.   Any speculative economic effects on the future market for plaintiff's Chesney and Kid Rock Photographs owing to a lack of attribution do not outweigh the lack of direct economic

---

*Inc. v. Moral Majority, Inc.*, 796 F.2d 1148, 1155 (9th Cir. 1986) ("[W]hen the use is noncommercial, the copyright owner must demonstrate by a preponderance of the evidence that there is 'some meaningful likelihood of future harm.'").

[18] Indeed, defendant made only approximately $27 in advertising revenue from the webpages displaying the Chesney and Kid Rock Photographs and at most $50 in donations via the links contained alongside the Pro-Life and Senate Articles.   Defendant did not directly sell the Photographs or even sell the articles in which the Photographs appeared.

[19] *See also* Pl. Decl. at 5 ("I anticipate that if I were able to achieve a meaningful degree of fame as a photographer, then these photographs could someday become very valuable, and benefit me and my family over the long-term.").

effects and defendant's generally noncommercial use of the Photographs.   Accordingly, this factor weighs in favor of finding a fair use.

## V.

But this analysis does not end the inquiry because Supreme Court and Fourth Circuit precedent dictate that rather than examining the fair use factors in isolation, courts must "weigh[] [the results] together, in light of the purposes of copyright." *Bouchat I*, 619 F.3d at 307-08 (quoting *Campbell*, 510 U.S. at 578) (internal quotation marks omitted).   In this regard, the Supreme Court and the Fourth Circuit have made clear that first and fourth factors are the most important.[20]   The second factor has limited weight where the challenged work is transformative and the first factor militates in favor of a fair use finding.   *See Gaylord v. United States*, 595 F.3d 1364, 1374 (Fed. Cir. 2010) (quoting *Blanch v. Koons*, 467 F.3d 244, 257 (2d Cir. 2006) (noting that "the creative nature of a copyrighted work had limited weight in the fair use analysis because the secondary work used the original 'in a transformative manner . . . .'").   And even where "the entire work is reproduced," the third factor "does not have its ordinary effect of militating against a finding of fair use." *Sony Corp.*, 464 U.S. at 450.[21]

These principles, applied here, point persuasively to the conclusion that defendant's use of the Chesney and Kid Rock Photographs constituted fair use.   As discussed above, the undisputed factual record reveals that the first and fourth fair use factors militate in favor of a fair use finding, the second factor is neutral at best, and the third factor weighs slightly against a fair use finding.   Given the paramount importance of the first and fourth factors, the limited

---

[20] Fourth Circuit precedent has "placed primary focus on the first factor." *Bouchat II*, 737 F.3d at 937.   And the Supreme Court has noted the paramount importance of the fourth factor. *Harper & Row Publishers*, 471 U.S. at 566 ("This last factor is undoubtedly the single most important element of fair use.").

[21] S*ee also Bouchat II*, 737 F.3d at 943 ("[T]he extent of permissible copying varies with the purpose and the character of the use.").

weight of the second and third factors when the work is transformative, and copyright's purpose to "[t]o promote the Progress of Science and useful Arts,"[22] the facts alleged in this case make out a fair use defense as a matter of law.   Accordingly, defendant's motion for summary judgment must be granted.[23]

An appropriate order will issue.

Alexandria, Virginia
January 8, 2018

/s/

T. S. Ellis, III
United States District Judge

---

[22] U.S. Const., Art. I, § 8, cl. 8.

[23] Because defendant is entitled to summary judgment on its fair use defense, it is unnecessary to reach or decide defendant's First Amendment argument.